**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| ALYSSA S. PETERSON, | |
| Plaintiff, | No. 3:20-cv-781 (SRU) |
| v. | |
| WELLS FARGO BANK, N.A., | |
| Defendant. | |

**RULING ON MOTION TO DISMISS**
.

For nearly a decade, Alyssa Peterson was engaged in bankruptcy court proceedings, in which Wells Fargo Bank, N.A. ("Wells Fargo") was a creditor. Shortly after her bankruptcy case concluded in April 2020, Peterson, proceeding *pro se*, filed the instant suit against Wells Fargo, raising a number of claims arising out of Wells Fargo's alleged failure to adhere to a settlement agreement regarding her pre-bankruptcy mortgage debt owed to Wells Fargo.

Now before me is Wells Fargo's motion to dismiss Peterson's complaint in its entirety for lack of subject matter jurisdiction under Rule 12(b)(1) and for failure to state a colorable claim under Rule 12(b)(6). *See* Doc. No. 17. For the reasons that follow, the motion is **granted**.

## I.     Standard Of Review

### A.   Federal Rule of Civil Procedure 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). A party that moves to dismiss for lack of subject matter jurisdiction "may refer to evidence outside the pleadings." *Id.* To survive a

motion brought under Rule 12(b)(1), a plaintiff "has the burden of proving by a preponderance of the evidence that [subject matter jurisdiction] exists." *Id.*

B. Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure Rule 12(b)(6) is designed "merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof." *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984) (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980)).

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor of the plaintiffs, and decide whether it is plausible that plaintiffs have a valid claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996).

Under *Twombly*, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 555, 570; *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). The plausibility standard set forth in *Twombly* and *Iqbal* obligates the plaintiff to "provide the grounds of his entitlement to relief" through more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (internal quotation marks omitted). Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it

strikes a savvy judge that actual proof of [the claims] is improbable, and . . . recovery is very remote and unlikely." *Id*. at 556 (internal quotation marks omitted).

## II.    Background

### A.    Allegations[1]

Peterson is a resident of Connecticut who, jointly with family members, owns a parcel of real property located at 213 Atlantic Avenue, Kure Beach, North Carolina ("Kure Beach Property"). Compl., Doc. No. 1, at ¶ 10. Peterson obtained a loan in the original amount of $100,000 from Ohio Savings Bank; she signed the note as the sole borrower, secured by a deed of trust against the Kure Beach Property. *See id*. at ¶ 11. Ohio Savings Bank thereafter assigned the deed of trust to Wells Fargo . *See id.*; *see also* Doc. No. 1-1, at 8.

Presumably because the note was in default, a collection file bearing case number 09-10856 was initiated on the Kure Beach Property, which then evolved into a foreclosure action bearing case number 09 SP 681 in North Carolina Superior Court of New Hanover County. *See* Doc. No. 1, at ¶¶ 30, 65. On October 5, 2010, Peterson filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Connecticut, which stayed the foreclosure proceeding in North Carolina. *See In re Peterson*, Case No. 10-23429 (Bankr. D. Conn. Oct. 15, 2019). Wells Fargo thereafter filed a proof of claim ("Claim # 4") to recover the indebtedness of the mortgage of the Kure Beach Property. *See* Compl., Doc. No. 1, at ¶¶ 12, 13. Peterson, through counsel, objected to the claim on April 11, 2011. *See* Doc. No. 1, at ¶ 13; Case No. 10-23429, Doc. No. 85.

---

[1] The following facts are drawn primarily from the complaint and from filings in the Bankruptcy Court proceeding, of which I may take judicial notice for purposes of the motion to dismiss. *See Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (quoting *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998)) ("'A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.'"). Unless otherwise indicated, all citations refer to the docket in the instant case.

On February 19, 2013, the Bankruptcy Court issued an order scheduling an evidentiary hearing in March 12, 2013 to determine the amount of Wells Fargo's claim. *See* Case No. 10-23429, Doc. No. 223. In that same order, the Bankruptcy Court determined that, in light of a ruling issued by the North Carolina Superior Court authorizing Wells Fargo to proceed with a foreclosure sale, the doctrine of collateral estoppel precluded the parties from relitigating several issues decided by the Superior Court: that Wells Fargo was the holder of a valid debt of the debtor, that the debt was in default, that the mortgage included a power-of-sale provision, and that the debtor had received notice of the foreclosure. *See* Doc. No. 1, at ¶ 14; Case No. 10-23429, Doc. No. 223, at 9–10. Because the Superior Court, however, did not and could not have decided the amount of the debt in question, the Bankruptcy Court held that neither collateral estoppel nor *res judicata* precluded it from determining that issue. *See* Compl., Doc. No. 1, at ¶ 15; Case No. 10-23429, Doc. No. 223, at 9–10.

Prior to the hearing, on March 7, 2013, Peterson filed her Fifth Amended Chapter 13 Plan, which provided for: (1) payment of the pre-petition arrearage on the Kure Breach Property through the plan and (2) payment of the post-petition mortgage payments by Peterson outside of the plan. *See* Case No. 10-23429, Doc. No. 245. The Bankruptcy Court confirmed the plan on March 8, 2013. *See* Case No. 10-23429, Doc. No. 247.

Following the hearing, the parties notified the Bankruptcy Court that they were in the process of finalizing a settlement agreement. *See* Compl., Doc. No. 1, at ¶ 17; Case No. 10-23429, Doc. No. 279, at 1. On September 10, 2013, Wells Fargo filed a second amended proof of claim, which set forth a pre-petition arrearage amount of $29,046.54. *See* Doc. No. 1-1, at 3. That claim provided that the amount of arrearage as of the petition date was "per settlement."

*See id*.  Peterson thereafter withdrew her objection to Wells Fargo's claim.  *See* Doc. No. 1, at ¶ 18; Case No. 10-23429, Doc. No. 295.

The pre-petition arrearage amount was cured by disbursement by the Chapter 13 Standing Trustee.  *See* Doc. No. 1, at ¶¶ 19, 22.  The Trustee had, in fact, made an overpayment of $9,880 to Wells Fargo, which, according to Peterson, Wells Fargo "should have paid [] forward because [defense] counsel had required [Peterson] to continue making post-petition loan payments as well as North Carolina property taxes while adjudication of Claim #4 was ongoing."  *See id*. at ¶¶ 22, 23.  The overpayment was later returned to the Trustee.  *See id.* at ¶ 23.

On August 15, 2017, Wells Fargo filed a motion to lift the bankruptcy stay on the Kure Breach Property pursuant to 11 U.S.C. § 362, contending that Peterson had failed to make post-petition payments and seeking relief from the automatic stay—as well as the co-debtor stay that arose pursuant to 11 U.S.C. § 1301—in order to enforce its remedies to foreclose on the property.  *See* Doc. No. 1, at ¶ 28; Case No. 10-23429, Doc. No. 538.

Peterson opposed the motion and the Bankruptcy Court held a hearing on October 4, 2017, during which defense counsel did not inform the court that Wells Fargo "was seeking to lift [the] stay to relitigate the pre-petition collection case."  *See* Compl,. Doc. No. 1, at ¶ 27; Case No. 10-23429, Doc. Nos. 553, 554.  The motion was taken under advisement.

On November 3, 2017, before the Bankruptcy Court had issued a decision, Wells Fargo filed a notice of termination of the automatic stay by operation of law pursuant to 11 U.S.C. § 362(e)(2).  *See* Case No. 10-23429, Doc. No. 557.  Several months later, on March 26, 2018, Wells Fargo requested entry of an order terminating the co-debtor stay, to which no co-debtor objected.  Case No. 10-23429, Doc. Nos. 597, 600.  On April 6, 2018, the Bankruptcy Court

granted the motion, thereby terminating the co-debtor stay.  *See* Case No. 10-23429, Doc. No. 600.

In May 2018, Peterson received a call from her brother asking about the status of the mortgage, noting that he had received a phone solicitation from an individual who was interested in buying the Kure Beach Property "pre-foreclosure."  Compl., Doc. No. 1, at ¶ 29.  He later told Peterson that he learned that the solicitation was related to the old collection file.  *See id.* at ¶ 30.

Thereafter, on May 18, 2018, Peterson filed a motion to stay pending appeal in Bankruptcy Court.  *See* id. at ¶ 33; Case No. 10-23429, Doc. No. 620.  In that motion, Peterson noted that Wells Fargo was proceeding to foreclose the Kure Breach Property and had scheduled an auction for June 8, 2018.  *See* Case No. 10-23429, Doc. No. 620, at 1.  She asserted that, because the pre-petition arrearage of the Kure Beach Property was settled and paid off, Wells Fargo was "judicially estopped" from pursuing the foreclosure of the Kure Beach Property.  *See id*. at 2.  Peterson appears to have further argued that, upon settlement and payment of the pre-petition arrearage, Wells Fargo should have withdrawn the North Carolina foreclosure action regarding the Kure Beach Property and that it was improper for Wells Fargo to pursue foreclosure in that action based on the recent default in post-petition payments without starting a new foreclosure action.  *See id*. at 1–4.

On May 23, 2013, Peterson received an amended notice of foreclosure, which cited to the initial collection file number (09-10856) and the initial foreclosure case number (09 SP 681).  *See* Compl., Doc. No. 1, at ¶ 34; *see also* Doc. No. 1-1, at 21 (Ex. D).  According to the notice, the sale of the Kure Beach Property was to be held on June 8, 2018.  *See* Compl., Doc. No. 1, at ¶ 34; *see also* Doc. No. 1-1 at 21 (Ex. D).

Immediately thereafter, Peterson filed another motion for an immediate order regarding the "settled pre-petition debt and court case," again asserting the state court foreclosure action concerning the Kure Beach Property was falsely "being resurrected for a public auction," and requesting an order barring the "re-litigation of the pre-petition [c]ase" and settled debt. *See* Doc. No. 1, at ¶ 35; Case No. 10-23429, Doc. No. 621, at 2–4. Peterson forwarded the motion to defense counsel and inquired why Wells Fargo was not honoring their prior settlement; she did not receive a response. *See* Compl., Doc. No. 1, at ¶ 36.

On May 25, 2018, the Bankruptcy Court denied Peterson's first motion for a stay pending appeal. *See* Case No. 10-23429, Doc. No. 622. In the order, the Bankruptcy Court declined to decide whether it was proper for Wells Fargo to proceed in an action that was initiated pre-petition, explaining that the issue was not properly before the court on the motion to stay and that "[s]uch an argument is better suited for resolution before the North Carolina state court." *Id*. at 6. The Bankruptcy Court added:

> The Co-Debtor stay was terminated and Wells Fargo may exercise whatever remedies it is entitled to under state law. The propriety of those remedies, or the procedural requirements for those remedies, is for the state court to determine. Any objection to Wells Fargo's choice of remedies should be addressed before the state court in North Carolina.

*Id*. at 7.

Also on May 25, 2018, and for substantially similar reasons, the Bankruptcy Court denied Peterson's second motion for an immediate order. *See* Case No. 10-23429, Doc. No. 623. There, the Bankruptcy Court held that injunctive relief was not warranted, explaining again that "because there is presently no bankruptcy stay in effect regarding the Property, Ms. Peterson is seeking assistance from the wrong court. If, as she asserts, the foreclosure auction or sale process is premised on a prepetition mortgage default that she has already cured through her Chapter 13 plan, then she needs to address the North Carolina state court on that issue." *Id*. at 2.

The court added:  "[t]his court does not have the power or authority to enter an injunction regarding the North Carolina state court foreclosure or sale process,"  and once again directed Peterson to the North Carolina state court for relief.  *Id*. at 3.  The court further noted that the Chapter 13 plan contemplated that Peterson would make periodic post-petition mortgage payments directly to Wells Fargo, and that Peterson conceded during an October 4, 2017 hearing that the most recent post-petition mortgage payment to Wells Fargo had occurred in 2014.  *Id*. at 2.

On June 4, 2018, Wells Fargo advised Peterson that an injunction was not necessary and that Wells Fargo had authorized postponement of the sale at the courthouse for 60 days pending an analysis of Peterson's claims.  Compl., Doc. No. 1, at ¶ 44.  Wells Fargo later reported that it wanted the mortgage to be repaid in full immediately or else the sale would go forward under the initial case number.  Wells Fargo's ultimate demand for settlement and repayment of the mortgage, along with fees and interest, was "forced" and executed before the scheduled sale.  *Id*. at ¶ 50.  Apparently, the foreclosure sale was cancelled in light of the settlement agreement reached between the parties.  *See id.*

On August 3, 2018, noting that the maximum five-year period to make Chapter 13 plan payments had elapsed and that Peterson had indicated that she does not intend to make the final payments, the Bankruptcy Court closed the case without discharge.  *See* Case No. 10-23429, Doc. No. 658.

B. Procedural History

Peterson initiated the instant case on June 6, 2020 against Wells Fargo.  Her complaint sets forth seven counts:  (1) declaratory judgment arising out of violations of the Full Faith and Credit Act, 28 U.S.C. § 1738, et seq.; (2) declaratory judgment arising out of violations of

"federal protection of a settled pre-petition collection action" under 11 U.S.C. § 362(a)(6); (3)

violations of the Connecticut Unfair Trade Practices Act; (4) breach of contract; (5) breach of the

implied covenant of good faith and fair dealing; (6) negligent misrepresentation; and (7)

wrongful foreclosure. *See* Compl., Doc. No. 1, at 8–18.  Peterson also appears to assert a claim

under the Fair Debt Collections Practices Act, 15 U.S.C. § 1692, et seq. *See id*. at ¶ 6.  She

principally seeks declaratory judgment, monetary and punitive damages, and costs. *See id.* at 19.

On August 12, 2020, Wells Fargo filed the instant motion to dismiss the complaint in its

entirety on Rule 12(b)(1) and Rule 12(b)(6) grounds. *See* Doc. Nos. 17, 18.  Peterson opposed

the motion on August 28, 2020, and Wells Fargo replied on September 11, 2020. *See* Doc. Nos.

20, 21.

### III.   Discussion

#### A.   Count One

Peterson first seeks a declaratory judgment that Wells Fargo violated the Full Faith and

Credit Act, 28 U.S.C. § 1738, et seq., by "re-activat[ing] the old extinguished and settled pre-

petition collection file and corresponding court case" regarding the Kure Beach Property. *See*

Compl., Doc. No. 1, at ¶ 57.  She contends that the settlement agreement executed between the

parties in her bankruptcy case should have "extinguished all related pre-petition collection

actions." *See id.* at ¶ 56.

The claim is without merit.  As the Supreme Court has observed, "the Full Faith and

Credit Clause, in either its constitutional or statutory incarnations, does not give rise to an

implied federal cause of action." *Thompson v. Thompson*, 484 U.S. 174, 182 (1988).  Instead,

the Clause "only prescribes a rule by which courts, Federal and state, are to be guided when a

question arises in the progress of a pending suit as to the faith and credit to be given by the court

to the public acts, records, and judicial proceedings of a State other than that in which the court is sitting." *Id.* (cleaned up). Accordingly, there is no private right of action for violations of the Full Faith and Credit Act, and Peterson's claim cannot proceed. *See Bryant v. Cherna*, 2013 WL 49806, at \*3 (W.D. Pa. Jan. 3, 2013), *aff'd*, 520 F. App'x 55 (3d Cir. 2013) ("[T]here is no private right of action for violation of the Full Faith and Credit Act.").

Peterson's invocation of the Declaratory Judgment Act ("DJA") does not compel a conclusion to the contrary. "The DJA is 'procedural only' and 'does not create an independent cause of action.'" *Chevron Corp v. Naranjo*, 667 F.3d 232, 244 (2d Cir. 2012) (cleaned up). Because a declaratory judgment "relies on a valid legal predicate," and because the Full Faith and Credit Act does not provide such a legal predicate, the "DJA cannot expand the [Act's] authority by doing so." *Id.* at 244–45.

For the foregoing reasons, and because granting leave to amend would be futile, Count One is **dismissed with prejudice**.[2]

## B. Count Two

Count Two, which is similarly predicated on Wells Fargo's alleged failure to "adhere to the doctrines of res judicata and collateral estoppel that resulted from settlement," and also seeks declaratory judgment, is **dismissed** for the same reasons as Count One.

To the extent Count Two additionally rests on alleged violations of 11 U.S.C. § 362(a)(6), I do not have subject matter jurisdiction to resolve the claim because such a claim must be raised in Bankruptcy Court in the first instance. Section 362(a)(6) of the United States Bankruptcy Code provides for an automatic stay "of . . . any act to collect, assess, or recover a

---

[2] Because I dismiss the claim on those grounds, I need not, and do not, address Wells Fargo's remaining arguments that the claim is also barred by the doctrines of quasi-estoppel, *res judicata*, and collateral estoppel.

claim against the debtor that arose before the commencement of the case under this title[.]"  11 U.S.C. § 362(a)(6).  As the Second Circuit has held, "[a]ny relief for violation of a stay must be sought in the Bankruptcy Court," rather than the district court, "which only has appellate jurisdiction over bankruptcy cases."  *E. Equip. & Servs. Corp. v. Factory Point Nat. Bank, Bennington*, 236 F.3d 117, 120–21 (2d Cir. 2001).  Because this is a lawsuit for damages and not a bankruptcy appeal, I do not have jurisdiction over the claim.

For the foregoing reasons, and because it would be futile to grant Peterson leave to amend, Count Two is **dismissed with prejudice**.[3]

C. Fair Debt Collection Practices Act

Peterson's claim under the Fair Debt Collection Practices Act ("FDPCA"), 15 U.S.C. § 1692, et seq., is likewise without merit.  At the start, I note that there is an unsettled question whether Peterson is permitted to bring her FDCPA claim in this court.  The Second Circuit distinguishes between claims arising during the pendency of a bankruptcy proceeding, which are generally not cognizable under the FDCPA, and those arising once bankruptcy proceedings have concluded, that is, when a plaintiff no longer has the "protection of the bankruptcy court." *Compare Simmons v. Roundup Funding, LLC*, 622 F.3d 93, 96 (2d Cir. 2010) (holding that an inflated proof of claim filed in bankruptcy court cannot form the basis of an FDCPA action), *with Garfield v. Ocwen Loan Servicing, LLC*, 811 F.3d 86, 88–93 (2d Cir. 2016) (holding that a debtor's FDCPA claim challenging a creditor's attempt to collect the arrears on a mortgage loan,

---

[3] I do not read Peterson's complaint as challenging Wells Fargo's failure to pay forward the Trustee's overpayment.  Even when construing the complaint liberally, Peterson only appears to raise that fact to provide context.  Accordingly, I do not address Wells Fargo's argument concerning its failure to apply the overpayment toward Peterson's note and mortgage debt.  Moreover, because I dismiss the claim on other grounds, I do not address Wells Fargo's agreements that the claim is also barred by *res judicata*, collateral estoppel, or the litigation privilege.

which had been discharged, as well as the maner in which the creditor attempted to collect post-bankruptcy payments, which the debtor concededly owed, may proceed in district court).

Neither *Simmons* nor *Garfield* is entirely on point here.  Although Wells Fargo pursued the forclosure with which Peterson now takes issue while the bankruptcy proceeding was ongoing, the Bankruptcy Court ultimately concluded that it did not have authority to enter an injunction regarding the foreclosure because Wells Fargo had secured relief from the bankruptcy stay.  Peterson, therefore, did not enjoy the protection of the Bankruptcy Court in that instance.  I need not resolve the question whether Peterson may bring a claim under the FDCPA in this court, however, because Peterson's FDCPA claim fails on the merits in any event.

The FDCPA seeks to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e).  Because the statute is remedial in nature, courts in the Second Circuit construe its provisions liberally.  *See Walters v. Performant Recovery, Inc.*, 124 F. Supp. 3d 75, 81 (D. Conn. 2015).

The Second Circuit evaluates FDCPA claims under an objective standard, measured from the perspective of the "least sophisticated consumer."  *See Gabriele v. Am. Home Mortg. Servicing, Inc.,* 503 F. App'x 89, 94 (2d Cir. 2012).  Lack of sophistication, however, is not to be conflated with unreasonableness; the FDCPA "does not aid plaintiffs whose claims are based on 'bizarre or idiosyncratic interpretations of collection notices.'"  *Ellis v. Solomon & Solomon, P.C.,* 591 F.3d 130, 135 (2d Cir. 2010) (cleaned up).

Peterson does not specify in her complaint under which sections of the FDCPA she brings suit.  Because Peterson alleges that Wells Fargo's conduct was "oppressive" as well as

"unfair and/or deceptive," and that Wells Fargo made "false, incomplete, and misleading statements," I construe her claims liberally as arising under sections 1692d, 1692e, and 1692f.

   1.  *Section 1692d*

   Peterson has not stated a colorable claim under section 1692d.  Section 1692d proscribes conduct "the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."  15 U.S.C. § 1692d.  It enumerates six non-exhaustive examples of harassing conduct:  (1) "[t]he use or threat of use of violence;" (2) "[t]he use of obscene or profane language;" (3) "[t]he publication of a list of consumers who allegedly refuse to pay debts;" (4) "[t]he advertisement for sale of any debt to coerce payment of the debt;" (5) "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously;" and (6) "the placement of telephone calls without meaningful disclosure of the caller's identity."  *See id.* § 1692d (1)–(6).  The section is intended "to protect debtors from oppressive and outrageous conduct, but not from every negative consequence of debt collection." *Monahan v. NRA Grp. L.L.C.,* 2011 WL 3901877, at *2 (D. Conn. Sept. 6, 2011).  To state a claim under section 1692d, a plaintiff must articulate "non-conclusory allegations about the debt collector's allegedly harassing or abusive conduct."  *Garcia v. Law Offices Howard Lee Schiff P.C.*, 2017 WL 1230847, at *4 (D. Conn. Mar. 30, 2017).

   The gravamen of Peterson's claim is that Wells Fargo reactivated the pre-petition collection file and foreclosure case—which she claims should have been closed upon settlement and payment of the pre-petition debt—to proceed with a foreclosure sale of the Kure Beach Property based on a default in post-petition payments without initiating a new foreclosure action. Peterson, however, fails to point to any authority or to otherwise adequately explain how that conduct rises to the level of harassment, abuse, or oppression under 1692d; the conclusory

13

allegations that the foregoing actions were oppressive and unfair do not suffice. [4]   Critically, moreover, Wells Fargo's conduct differs in kind from the examples of statutorily proscribed conduct set forth above. *See Garcia v. Law Offices Howard Lee Schiff P.C.*, 2017 WL 1230847, at *5 (D. Conn. Mar. 30, 2017) ("While the list is non-exclusive, the examples serve as a guide for the Court in assessing the plausibility of Mr. Garcia's claims under Section 1692d").

For those reasons, even when drawing all reasonable inferences in Peterson's favor, Peterson has failed to state a plausible claim under section 1692d.

### 2. *Section 1692e*

Section 1692e bars the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.  The section includes a non-exclusive list of sixteen prohibited practices, including:  (1) "[t]he false representation of . . . the character, amount, or legal status of any debt;" (2) "[t]he representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action;" and (3) "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken." *Id*.  It also includes a catch-all provision that prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." *Id*.  A communication is considered "false, deceptive, or misleading" if it is "open to more than one reasonable interpretation, at least one of which is inaccurate." *Garcia,* 401 F. Supp. 3d at 250

---

[4] I note further that a settlement agreement does not "extinguish" a case docket number, contrary to Peterson's contention.  Wells Fargo was free to pursue collection of the post-petition debt in the "old" case or in a new case.  Accordingly, it is of no moment that, following settlement, the post-petition debt was sought in the same action as the pre-petition debt.

(cleaned up).  The threshold question is "whether the hypothetical least sophisticated consumer could reasonably interpret the representation in a way that is inaccurate." *Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*, 875 F.3d 128, 135 (2d Cir. 2017) (cleaned up).

In *Cohen*, the Second Circuit incorporated a materiality requirement into section 1692e; in doing so, it explained that the requirement "furthers the dual purposes of the least sophisticated consumer standard: the need to protect unsuspecting consumers from unscrupulous debt collectors and the need to ensure that debt collectors are not held liable for unreasonable misinterpretations of collection notice." *Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 85–86 (2d Cir. 2018).  The action in question must therefore be "materially false or misleading" in order to be actionable under the FDCPA. *Id*. at 85.  The gravamen of the materiality inquiry is whether the false statement would "frustrate a consumer's ability to intelligently choose his or her response." *Id*. at 86 (cleaned up).  That is, communications and practices are materially misleading if they "could mislead a putative-debtor as to the nature and legal status of the underlying debt" or if they "could impede a consumer's ability to respond to or dispute collection." *Id*.  By contrast, "mere technical falsehoods that mislead no one are immaterial and consequently not actionable" under section 1692e.  *Id*. (citations and quotation marks omitted).

In this case, even when drawing all reasonable inferences in Peterson's favor and construing the complaint liberally, the complaint fails to raise a plausible inference that Wells Fargo's communications could have materially misled the least sophisticated consumer.  The only aspect of the amended notice with which Peterson takes issue is the notice's reference to the pre-petition collection file and case numbers.  The least sophisticated consumer, however, could not have reasonably construed that reference as suggesting that Wells Fargo was disputing the prior settlement agreement or otherwise seeking pre-petition debt. *See Clomon v. Jackson*, 988

15

F.2d 1314, 1319 (2d Cir. 1993) ("[C]ourts have consistently applied the least-sophisticated-consumer standard in a manner that protects debt collectors against liability for unreasonable misinterpretations of collection notices.").  If anything, the inclusion of those numbers would have been viewed as a mere technical error that would have misled no one.

Peterson, further, fails to adequately explain how pursuing the foreclosure in the initial foreclosure case—and the concomitant failure to initiate a new foreclosure proceeding—was materially false, deceptive, or misleading, or otherwise violative of FDCPA.  Nor does Peterson dispute that Wells Fargo was entitled to collect the debt; in fact, Peterson concedes that her debt was in default post-petition.  *See* Opp., Doc. No. 20, at 2 ("Plaintiff acknowledges in her pleading that said debt was in default again post-petition because certain assets never materialized.").

Because Peterson fails to plausibly allege that Wells Fargo's actions could have misled a consumer about the nature or legal status of the debt, or otherwise could have impeded a consumer's ability to respond to or dispute collection, the complaint fails to state a claim under section 1692e.  For those reasons, Peterson's section 1692e claim is dismissed.

### 3.  *Section 1692f*

Peterson's section 1692f claim likewise fails.  Section 1692f requires that a debt collector "not use unfair or unconscionable means to collect or attempt to collect any debt."  15 U.S.C. § 1692f.  It enumerates eight non-exhaustive examples of actionable conduct, including:  (1) "[t]he collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law;" (2) "[t]he solicitation by a debt collector of any postdated check or other postdated payment instrument for the purpose of threatening or instituting

criminal prosecution;" and (3) "[c]ausing charges to be made to any person for communications by concealment of the true purpose of the communication." *Id.*

In *Cicalo v. Hunt Leibert Jacobson, P.C.*, and more recently in *Scheinman v. Glass & Braus LLC,* I dismissed a section 1692f claim because that the complaint did not tie specific factual allegations to the claim. *See* 2017 WL 101302, at *3 (D. Conn. Jan. 10, 2017); 2020 WL 6875139, at *7 (D. Conn. Nov. 23, 2020). Peterson's complaint suffers from that same defect; it fails to set forth any separate allegations supporting a section 1692f claim. Peterson's section 1692f claim is therefore dismissed.

For all the foregoing reasons, Peterson's claim arising under the FDCPA is **dismissed**.

D. Remaining Counts

"The exercise of supplemental jurisdiction is within the sound discretion of the district court." *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 117 (2d Cir. 2013) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 349–50 (1988)). In determining whether to exercise such jurisdiction, courts consider "the values of judicial economy, convenience, fairness, and comity." *Id.* (citing *Carnegie Mellon Univ.*, 484 U.S. at 350). When "all federal claims have been dismissed, the balance of factors will 'usual[ly]' point toward a declination." *Id.* (citing *Carnegie Mellon Univ.*, 484 U.S. at 350 n.7).

In this case, because all of the federal claims have been dismissed early in the action, I decline to exercise supplemental jurisdiction over Peterson's remaining state law claims.[5] Those claims are therefore **dismissed without prejudice.**

---

[5] I note that Peterson only invokes 28 U.S.C. § 1331—federal question jurisdiction—as a basis for subject matter jurisdiction.

**IV.**     **Conclusion**

For the foregoing reasons, Counts One and Two are **dismissed** with prejudice; the

remaining counts are **dismissed** without prejudice.  Should Peterson seek to amend her

complaint to re-allege any of the counts that I dismissed without prejudice, she must file an

amended complaint within 28 days of this order.  Failure to do so will result in the dismissal of

the case with prejudice.

So ordered.

Dated at Bridgeport, Connecticut, this 17th day of March 2021.

<u>/s/ STEFAN R. UNDERHILL</u>
Stefan R. Underhill
United States District Judge