UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ALYSSA S. PETERSON,<br>     Plaintiff,<br><br>     v.<br><br>WELLS FARGO BANK, N.A.,<br>     Defendant. | No. 3:20-cv-781 (SRU) |

**RULING ON PLAINTIFF'S MOTION FOR RECONSIDERATION**

Alyssa Peterson ("Peterson"), proceeding *pro se*, alleged that Wells Fargo Bank, N.A. ("Wells Fargo") wrongfully attempted to foreclose upon a family property in 2018. I construed her complaint to raise statutory claims in connection with Connecticut and North Carolina prohibitions on unfair and deceptive trade practices as well as common law claims for breach of contract, breach of the implied covenant of good faith and fair dealing, negligent misrepresentation, and wrongful foreclosure. After concluding that Peterson had failed to state a claim and that repleading her claims would be futile, I granted Wells Fargo's motions to dismiss and dismissed all of Peterson's claims with prejudice.

Peterson now moves for reconsideration of that order of dismissal. Doc. No. 56. Peterson argues that I erred by declining to consider supplemental documents that she submitted with my consent after the hearing on the motions to dismiss.

I **grant** the motion for reconsideration. Upon review, I conclude that the motion is unmeritorious. Accordingly, I **deny** the requested relief.

**I.**     **Background**

I assume the parties' familiarity with the facts and procedural history of the case and recount only the circumstances salient to the motion for reconsideration.  I also assume the parties' familiarity with the terms of art I adopted in the order of dismissal.

On April 16, 2021, Peterson filed an amended complaint.  Doc. No. 24.  Shortly thereafter, on May 14, 2021, Wells Fargo moved to dismiss the amended complaint.  Doc. No. 27.  On June 7, 2021, Peterson moved for leave to amend the amended complaint and file a second amended complaint.  Doc. No. 31.  I granted Peterson leave to amend and indicated that I would treat Wells Fargo's motion to dismiss, Doc. No. 27, as directed against the second amended complaint, Doc. No. 33.  On June 16, 2021, Peterson filed the Second Amended Complaint.  SAC, Doc. No. 34.  Wells Fargo then filed a motion to dismiss the Second Amended Complaint, Doc. No. 35, which incorporated by reference its pending Motion to Dismiss the Corrected Amended Complaint and accompanying memorandum of law, Docs. No. 27, 28.  Peterson filed an opposition on July 16, 2021.  Doc. No. 38.  Wells Fargo did not file a reply.

On November 15, 2021, I held a hearing on the motions to dismiss and took them under advisement.  Doc. No. 46.  At Peterson's request, I permitted her to submit additional documents supplementing the record.  *Id*.  Both at the hearing and on the docket thereafter, I advised that I may convert the motions to dismiss and Peterson's replies under Federal Rule of Civil Procedure 12 into motions for summary judgment under Rule 56 after reviewing the documents supplementing the record.  Doc. No. 47.

On November 30, 2021, Peterson submitted twenty supplemental documents (the "Supplemental Record").  Doc. No. 48.  On December 11, 2021, Wells Fargo responded.  Doc. No. 53.

On March 31, 2022, I granted Wells Fargo's motions to dismiss and dismissed all of Peterson's claims with prejudice ("the Ruling").  Doc. No. 54.   In doing so, I excluded the Supplemental Record and declined to convert the motions to dismiss.

On April 11, 2022, Peterson moved for reconsideration and requested that I take judicial notice of the documents in the Supplemental Record.  Doc. No. 56.

## II.     Standard of Review

Peterson cites to Federal Rules of Civil Procedure 59 and 60(b) in her motion, and she refers to her motion as a "Motion for Reconsideration" rather than a motion for relief from judgment.  *See* Doc. No. 56.  She filed the motion within twenty-eight days of the entry of judgment and appears to challenge the merits of the order of dismissal. *See* Doc. No. 436. Accordingly, her motion is most reasonably construed as a motion for reconsideration pursuant to Federal Rule of Civil Procedure 59(e) (a motion to alter or amend judgment), rather than a motion for relief from a final judgment pursuant to Rule 60(b).  *Compare* Fed. R. Civ. P. 59(e) *with* Fed. R. Civ. P. 60; *see also Banister v. Davis*, 140 S. Ct. 1698, 1703 (2020) ("federal courts generally have used Rule 59(e) only to reconsider matters properly encompassed in a decision on the merits") (quoting *White v. N.H. Dep't of Emp't Sec.*, 455 U.S. 445, 451 (1982)). Nevertheless, I assess the motion under both standards.

## III.    Discussion

As I understand the motion, Peterson argues that my rulings regarding the statutory trade practices and breach of settlement claims were erroneous because I "exclude[ed] the [Supplemental Record] documents" and "fail[ed] to take judicial notice of the numerous references to full settlement of the North Carolina case."  Doc. No. 56, at 6-7.  In Peterson's view, these documents "provided 'proof'" that the North Carolina matter was

"settled in full." *Id.* at 7.  I conclude that Peterson's Rule 59(e) Motion to Alter the Judgment seeks without basis to relitigate a correctly decided issue; and that Peterson's Rule 60(b) Motion for Relief from Judgment is unmeritorious.  Accordingly, denial is appropriate.

    A.  <u>The Rule 59(e) Motion to Alter or Amend a Judgment Is Improper</u>

I agree with Wells Fargo's assertion that Peterson's motion more accurately seeks reconsideration of my decision to exclude the Supplemental Record and not convert the motions to dismiss to motions for summary judgment.  I construe the argument as raising a motion under Federal Rule of Civil Procedure 59(e), and I conclude that it is unavailing.

In this Circuit, a litigant who seeks reconsideration of an order or judgment pursuant to Rule 59(e) faces a difficult hurdle.  Motions for reconsideration "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked— matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).  Courts have granted motions for reconsideration in limited circumstances, including: (1) where there has been an intervening change of controlling law; (2) where new evidence has become available; or (3) where there is a need to correct a clear error or prevent manifest injustice.  *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (citing 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 4478).  On the other hand, a motion for reconsideration is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (cleaned up).

I excluded the Supplemental Record because I concluded that I had enough information to assess the sufficiency of Peterson's claims pursuant to Rule 12(b)(6).  In preparing the Ruling,

I thoroughly considered the pleadings. In addition, I extensively reviewed additional documents appended to the pleadings, expressly or constructively incorporated by reference in the pleadings, or that were integral to the pleadings and of which I could take judicial notice. Peterson has made no showing that my decision to the exclude the Supplemental Record was incorrect due to an intervening change of controlling law or in light of new evidence, and she has not carried her burden of establishing a clear error or manifest injustice.

There was no error in my decision to exclude the Supplemental Record. As I explained in the Ruling, "when matters outside the pleadings are presented in response to a 12(b)(6) motion, a district court must either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material." Doc. No. 54, at 14 (cleaned up). This decision is within the court's discretion. 5C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1366 (3d ed.).

Here, then, I could have exercised discretion to accept the Supplemental Record and rely on it, *or* I could have exercised discretion to accept the Supplemental Record and exclude it. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 154 (2d Cir. 2002) ("Once the District Court was presented with matters outside the pleadings. . . , [it] could have excluded the extrinsic documents."). Therefore, I appropriately exercised discretion when I decided to exclude the Supplemental Record. Peterson, through her motion, seeks to relitigate that decision. But a motion for reconsideration pursuant to Rule 59 will not be granted where the party merely seeks to relitigate an issue that has already been decided. *Shrader*, 70 F.3d at 257. Therefore, Peterson's motion provides no basis for reconsideration.

To any extent that Peterson raises a motion under Rule 59(e) to challenge my decision not to consider the Supplemental Record, the motion for reconsideration is **denied**.

B.  The Rule 60(b) Motion for Relief from a Final Judgment Is Unmeritorious

In addition, Peterson alleges that the 117-page Supplemental Record constitutes "new evidence" to support her conclusion that Wells Fargo breached the terms of the parties' settlement of Claim Number Four in the *Bankruptcy Case*. *See* Doc. No. 56, at 1 ("these submittal are deemed 'new' for the purposes of this motion"), 7 (asserting that the Supplemental Record "provide[s] the 'proof'" and "substantiat[es]" her assertion that the North Carolina matter was "settled . . . in full" through the *Bankruptcy Case*). I construe those allegations as arising under Federal Rule of Civil Procedure 60(b), which grants courts the discretion to set aside a final judgment in "exceptional circumstances," such as when there is "new" evidence. *Mendell In Behalf of Viacom, Inc. v. Gollust*, 909 F.2d 724, 731 (2d Cir. 1990).

Rule 60(b) provides that a district court may relieve a party from a final judgment, order, or proceeding for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).  To warrant relief pursuant Rule 60(b)(2), a movant like Peterson must show that:

> (1) the newly discovered evidence was of facts that existed at the time of trial or other dispositive proceeding, (2) the movant must have been justifiably ignorant of them despite due diligence, (3) the evidence must be admissible and of such importance that it probably would have changed the outcome, and (4) the evidence must not be merely cumulative or impeaching.

*United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 392 (2d Cir. 2001) (citations omitted).

As I explained in the Ruling, the General Court of Justice, Superior Court Division of New Hanover County, authorized Wells Fargo to proceed with a foreclosure sale on the Kure Beach Property in 2009.  Doc. No. 54, at 31-34 (citing to Clerk's Order to Allow Foreclosure Sale, *Foreclosure Case* (N.C. Super. Ct. Oct. 19, 2009)).  Although the authorization to proceed with a power-of-sale foreclosure was based on the Pre-Petition Default, the authorization was still in effect as a matter of law when Wells Fargo sought to proceed with the foreclosure sale in 2018— *unless* the power-of-sale was somehow terminated.  In the Ruling, I described three conditions by which such power-of-sale may be terminated, and I concluded that the pleadings, supplemented by elements of the record I could consider, did not allege any of those conditions.

First, Peterson would have needed to allege that the terms of the Note and/or Deed of Trust protected her from foreclosure by terminating the power-of-sale after she cured the Pre-Petition Default.  *Id.* at 33 (citing to Deed of Trust, Doc. No. 538-1, at 13-14 ¶ 19).  As I discussed in the Ruling, Peterson did not plead a cause of action for breach of the Deed of Trust in the Second Amended Complaint.  As a general rule, a court "need not entertain an argument that was not briefed." *Southridge Partners II Ltd. P'ship v. SND Auto Grp., Inc.*, 2019 WL 6936727, at *6 (D. Conn. Dec. 19, 2019) (citation omitted).  Furthermore, although a court has a "duty to liberally construe a plaintiff's complaint," especially when a plaintiff proceeds *pro se*,

such duty "is not the equivalent of a duty to re-write it." *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (citation omitted).  Here, Peterson was twice afforded an opportunity to amend her complaint, and she failed to allege a claim for breach of the Deed of Trust or incorporate sufficient factual allegations from which this Court could construe such a claim.  Accordingly, any attempt to warrant reconsideration on this basis asks too much.

Second, Peterson would have needed to allege that she paid off the entire amount due under the loan for the Kure Beach Property, as required to terminate a power of sale by operation of law pursuant to North Carolina General Statutes section 45-21.20.  But there is no dispute that Peterson did not pay off the loan in full until 2018.  SAC, Doc. No. 34, at 10 ¶ 50.

Third, Peterson would have needed to allege that Wells Fargo agreed to terminate the *Foreclosure Case* as a term of the agreement to settle the Pre-Petition Default and Arrearage.  In her introduction framing the Supplemental Record, Peterson repeatedly calls attention to Wells Fargo's recognition that the Pre-Petition Default and related arrearage was settled.  *See* Doc. No. 48, at 1-4.  But such evidence is of no import, because Wells Fargo has never disputed that there was an agreement to settle Claim Number Four.

Instead, the decisive issue is the terms of the parties' agreement to settle Claim Number Four and whether the settlement terminated the power-of-sale.  Peterson included Proof of Claim Number Four with the Complaint and again with the Supplemental Record, from which I construed that the proof of claim constituted the allegedly breached settlement agreement.  As I explained in the Ruling:

> Peterson includes the allegedly breached agreement with the Second Amended Complaint.  *See* SAC, Doc. 34, at 23.  The document is a proof of claim filed by Wells Fargo in the *Bankruptcy Case*, a.k.a. Claim Number 4.  *Id.*  It illustrates that Peterson's "arrearage and other charges" pursuant to the settlement of Claim Number 4 were $29,046.54, and that the "Amount of Secured Claim" was $125,043.76.  *Id.*  But, as Wells

> Fargo correctly observes, the proof of claim merely represented the parties' stipulation regarding the amount of Peterson's pre-petition arrearage. Doc. 18, at 31. On its face, it did not "promise to dismiss the North Carolina foreclosure action" nor "relieve [Peterson] of the obligation to make her post-petition mortgage payments." *Id*. (emphasis omitted). In other words, the settlement of Claim Number 4 did not manifest the parties' mutual assent to terminate the power-of-sale, nor alter Peterson's extant obligation to maintain payments to Wells Fargo outside the Bankruptcy Plan. Peterson admits that she failed to comply with her obligation to make post-petition mortgage payments. SAC, Doc. No. 34, at ¶ 24. Therefore, I agree with Wells Fargo that it did not breach its settlement regarding Peterson's prepetition debt by pursuing a lawfully authorized foreclosure sale arising from Peterson's default on her obligation to maintain post-petition payments

Ruling, Doc. No. 54, at 44-45.

In Connecticut, where there is a written agreement between two parties, the "intent of the parties determines whether the written agreement was the final repository of any oral agreements." *Conn. Acoustics, Inc. v. Xhema Const., Inc.*, 88 Conn. App. 741, 746 (2005). "Where the parties reduce an agreement to a writing which . . . appears to be a complete agreement, it is taken to be an integrated agreement unless it is established by other evidence that the writing did not constitute a final expression." Restatement (Second), Contracts § 209(3). Neither the Second Amended Complaint nor the additional documents I considered when evaluating the sufficiency of the Second Amended Complaint cast any doubt upon the notion that the Proof of Claim Number Four constituted the parties' agreement to settle the Pre-Petition Arrearage. Importantly, neither do the documents in the Supplemental Record.

"If the court determines that the parties intended the writing to be an integrated agreement," then the parol evidence rule applies. *Conn Acoustics*, 88 Conn. App. at 746. "The parol evidence rule is a rule of substantive law which provides that when two parties have made a contract and have expressed it in a writing to which they have both assented as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent

9

understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing." *Suburban Sanitation Service, Inc. v. Millstein*, 19 Conn. App. 283, 286 (1989) (cleaned up). If an agreement is fully integrated, then evidence extrinsic to the written agreement itself is generally "not considered when determining the contractual obligations of the parties." *Conn. Acoustics, Inc.*, 88 Conn. App. at 746.

Here, the evidence Peterson seeks to introduce to challenge my conclusions regarding the settlement of Claim Number Four is inadmissible under the parol evidence rule. Therefore, it is not admissible evidence, as required under Circuit precedent, that can be used to satisfy the "onerous" standard for relief under Rule 60(b)(2). *See Int'l Bhd. of Teamsters*, 247 F.3d at 392. In particular, in Exhibit B, Peterson provides an email from her bankruptcy counsel describing the terms of a settlement offer provided by Wells Fargo's counsel to Peterson's counsel. Doc. No. 48 at 18. But this email, self-evidently, is not a final agreement; it requests that Peterson's bankruptcy counsel "advise if the [proposal] is acceptable" to Peterson, and it contains no evidence regarding Peterson's response. *Id.* Likewise, Exhibit C, another email from Wells Fargo's counsel to Peterson's bankruptcy counsel that includes a proposed breakdown of settlement terms, is also a proposal rather than a final agreement. *Id.* at 20-21. If there is no manifestation of the parties' mutual assent to the terms of an agreement, then there is no agreement. Restatement (Second), Contracts §§ 3, 22.

In contrast, the next document, Exhibit D, is the amended proof of claim submitted to the Bankruptcy Court. Peterson herself characterizes Proof of Claim Number Four as the "settlement agreement," suggesting that she also understood it was the parties' final agreement. SAC, Doc. No. 34, at 3 ¶ 17 (distinguishing the "discuss[ion]" of and "negotiations" regarding settlement with the "agreement finally filed in court at Exhibit A," which is the amended proof

of claim), 7 ¶ 38 ("Plaintiff had understood that the filing of a settlement agreement, withdrawal of her own claim and full payment, constituted a valid and enforceable contract."). Therefore, taken together, the Supplemental Record does not rebut my conclusion that Proof of Claim Number Four represented the parties' fully integrated agreement to settle the Pre-Petition Default and arrearage. To evaluate the sufficiency of the breach of settlement contract claim, I appropriately evaluated Proof of Claim Number Four. Accordingly, evidence presented to contradict the plain terms of the fully integrated document is inadmissible parol evidence.

Therefore, to any extent that Peterson raises a motion under Rule 60(b) based on "new evidence," the motion for reconsideration is **denied**.

## IV.     Conclusion

In light of the foregoing, there is no basis on which to reconsider the Ruling on the Motions to Dismiss, Doc. No. 54. Accordingly, the relief sought is denied.

Under Federal Rule of Appellate Procedure 4(a)(4)(A), a litigant seeking to appeal a judgment or order issued in a civil case must file a notice of appeal within thirty days after the date` of entry of the judgment or order appealed from. Fed. R. App. P. 4(a)(1). Here, Peterson's timely motion for reconsideration tolled the time to file an appeal. With the entry of this order, the appeal period will no longer be tolled.

So ordered.

Dated at Bridgeport, Connecticut, this 20th day of May 2022.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge